## Riley Darnell v. Albert J. Geis.

| 78 | 493 |
|----|----|
| 94 | ¹2 2 |
| 94 | ²223 |
| 78 | 493 |
| 99 | ¹184 |
| 78 | 493 |
| d108 | 20 |

1. CONTRACTS—*In Restraint of Trade.*—When contracts of this kind are reasonable in their nature, and are supported by a valid consideration, they will be enforced by the courts.  The question as to whether such a contract is reasonable, is a question of both law and fact.

2. SAME—*In Partial Restraint, etc.*—A contract which is only in

partial restraint of trade is valid, provided it is reasonable and has a consideration to support it.

3.  SAME—*When Void and When Valid.*—When the restriction embraces too large a territory it will be unreasonable and void, as being wider than is necessary for the protection of the party in whose favor it is imposed; but where the restriction limits the exercise of the occupation within reasonable bounds, it is valid as being no larger than is necessary to protect the party in question.   .   .

**Assumpsit,** for an alleged breach of agreement.  Trial in the Superior Court of Cook County: the Hon. PHILIP STEIN, Judge, presiding.  Finding and judgment for plaintiff.  Appeal by defendant.  Heard in this court at the March term, 1898.  Affirmed.  Opinion filed October 21, 1898.

### STATEMENT.

Early in 1895 a former clerk of appellant, named Perryman, was his competitor in the gent's furnishing goods business at 219 Dearborn street, Chicago. At that time there was a general movement of ticket offices to Adams street, and a Mr. Hamilton, who was a renting agent and acquainted with both parties to this suit, went to appellee, who was a ticket broker, to see if he would lease the Perryman place. The statements by the witness Hamilton are not materially contradicted. He testified as follows: " I went to Mr. Darnell and asked him how much it was worth to him to get Perryman out. He asked what he wanted. I said Perryman wanted $1,500; that I had a tenant who would take the place, but that he would not pay that amount of money, and asked what it was worth to him; he said it wasn't usual, and he would like to have it done very quietly, as he would not like to have it generally known he was buying out any competitor, but he would give $500 to get him out of the place, provided the tenant who took it would sign an agreement he would not sublet while Darnell was there to any other gents' furnishing goods business. I went to see Mr. Geis, who told me at the time he would not pay any bonus; he thought the rent was a little too high, and he didn't think he would pay any more for it than just the lease. Several days after Mr. Geis sent for me and said if I could get from Mr. Darnell $500 he would take the

place.   I went to see Mr. Darnell, and said for $500 I could deliver the premises and have them vacated.   He said he didn't feel like paying $500 cash, but if Mr. Geis will pay the money, I will pay him $100 to-day and $100 thereafter on the first of each and every month, and he did give me a check which I gave to Mr. Geis, and I wrote an agreement which Mr. Geis signed, saying he would not sublet to a furnishing goods store."

The negotiations between Hamilton and Perryman, resulting in the latter agreeing to accept $500, took some considerable time.

Appellant signed and delivered to appellee the following paper:

"CHICAGO, April 1, 1895.

MR. A. J. GEIS:

. DEAR SIR:   This is to certify that I agree to pay you ($100) one hundred dollars cash the moment you show me the Perryman lease transferred to you.   And I also agree to pay you one hundred dollars per month for the next four succeeding months, making five hundred dollars in all, in consideration that you give me a written agreement that you will not sublet the Perryman store to be used for men's furnishing goods during the term of your four years' lease, etc.                                        RILEY DARNELL."

· Appellee paid to Perryman the $500, and signed and delivered to appellant the following paper:

"I hereby agree to not sublet my store, No. 219 Dearborn street, to anything which will conflict with the business now conducted by Riley Darnell, said business being the one of a gentleman's furnisher, for the term of my lease, running until May 1, 1899."

· Appellant paid appellee $100 at the time the arrangement was consummated, $100 on the first of June, 1895, and $100 on the first of July, 1895.   He failed to make the remaining two payments, due in August and September, 1895, and he testified that he did so because "I was told by a party Mr. Geis wasn't able to carry out his contract; that I was foolish to do such a thing as to pay that."

November 2, 1895, this suit was brought by appellee before a justice of the peace to recover from appellant the $200 unpaid; judgment was rendered against appellant, and an appeal taken to the Superior Court.

Appellee occupied the premises until December 1, 1896, when he delivered them to the landlord, Mr. Heisen, who canceled his lease. ' Since then appellee has had no control over the premises, and there has been no restriction on the landlord concerning the renting of the same for a gent's furnishing goods store. The premises have, however, never been occupied as a gent's furnishing goods store since the time appellee first took possession of them.

THORNTON & CHANCELLOR, attorneys for appellant.

Whatever may have been the rule that formerly prevailed, the true test in determining the validity of this class of contracts, according to the latest and best considered modern authorities, is not whether the restraint imposed be absolute or general, limited or qualified, but whether a contract in restraint of trade exists, whose enforcement would injure or have a tendency to injure the public. 2 Beach on Modern Law of Contracts, Sections 1569, 1588; Nester v. Con. Brewing Co., 161 Pa. St. 473; More v. Bennett, 140 Ill. 69; Skrainka v. Scharringhauser, 8 Mo. App. 522; Tool Co. v. Norris, 2 Wall. 45, 46; Texas Standard Oil Co. v. Adoue, 83 Tex. 650; Foss v. Cummings, 149 Ill. 353; Beal v. Chase, 31 Mich. 490; Diamond Match Co. v. Roeber, 35 Hun, 421; Gulick v. Bailey, 5 Halsted (N. J.), 96; Craft v. McConoughy, 79 Ill. 347.

All contracts whose operation prejudices or is calculated to prejudice the welfare of the public, are void.

In passing upon the validity of this class of agreements, what the welfare of the public demands is a consideration that is primary and paramount to all others; and it is the duty of the court to see that the interests of the public are in no manner or degree jeopardized. Morris Run Coal Co. v. Barclay C. Co., 68 Pa. St. 173.

In all cases of contracts in restraint of trade, whether the restraint imposed be absolute or general, limited or

Darnell v. Geis.

qualified, the law presumes that they are illegal, and it devolves upon the party seeking to enforce such a contract to rebut this presumption by establishing the fact that it not only was made upon a consideration that would support a contract in which the public have no interest, but that it was entered into for good reasons; that the agreement was proper, reasonable and useful in the eye of the law, as that it was made to protect a vendee in the enjoyment of a business and its good will which he purchased from his vendor, or that it involved some similar element which made it a reasonable and useful contract.    The Texas Standard Oil Co. v. Adoue, 83 Texas, 650; Morris C. Co. v. Barclay Coal Co., 68 Pa. St. 185; Brown v. Rounsavell, 78 Ill. 589; Ward v. Byrne, 5 Mees. & W. 548; Pierce v. Fuller, 8 Mass. 223; Mallan v. May, 11 Mees. & W. 653; Chappell v. Brockway, 21 Wend. 157; Callahan v. Donnolly, 45 Cal. 152, 154; Talcott v. Brackett, 5 Ill. App. 60; Ross v. Sadgbeer, 21 Wend. 165; 11 Am. Ry. & Corp. Reports, page 407, note 13; More v. Bennett, 41 Ill. App. 164; Mitchell v. Reynolds, 1 P. Wms. 181; Field Cordage v. Natl. Cordage Co., 6 Ohio Cir. Ct. 615; Leather Cloth Co. v. Lorsont, L.R. 9.

Contracts in partial restraint of trade which the law upholds are those which are made for the purpose of protecting a party in the enjoyment of a business and its good will from the future competition of his vendor within certain prescribed limits, or are based on similar circumstances which makes it equitable and reasonable for the parties to enter into the agreement.    11 Am. Ry. & Corp. Reports, page 425, note 29; pages 407, 408, 409, 410, note 13; page 421, note 25; More v. Bennett, 140 Ill. 69; Carroll v. Giles, 9 S. E. Rep. 422; Chapin v. Brown Bros., 83 Iowa, 160; Coal Co. v. Coal Co., 68 Pa. St. 173; Greenhood on Public Policy, page 683.

Hauze & Danzinger, attorneys for appellee.

Mr. Justice Horton delivered the opinion of the court. It is argued by appellant that the contract in question is

in restraint of trade and against public policy, and that therefore the judgment should be reversed. This question is argued at length by attorneys for appellant, accompanied by very elaborate citations of authorities. The facts do not, however, sustain the contention that the agreement in question, so far as it is here involved, is open to the objection urged against it. There is no agreement that Perryman, a former employe of appellant, should not continue in business, or that he should not do so in that immediate locality. The restriction applies to only one store in this great city, and to that for only a limited period. That could not injure or have a tendency to injure the public.

When contracts of this kind are reasonable in their nature, and are supported by a valid consideration, they will be enforced by the courts. The question as to whether such a contract is reasonable, is a question of both law and fact.

In the case of Hursen v. Gavin, 162 Ill. 377, a bill was filed to restrain appellant from engaging in the livery and undertaking business in the city of Chicago for the remaining portion of a contract period of five years. The court in that case says (p. 380) that "a contract which is only in partial restraint of trade is valid, provided it is reasonable and has a consideration to support it.   *   *   *   When the restriction embraces too large a territory it will be unreasonable and void, as being wider than is necessary for the protection of the party in whose favor it is imposed; but where the restriction limits the exercise of the occupation within reasonable bounds it is valid as being no larger than is necessary to protect the covenantee."

And again on page 328 : "Where one person is restrained from doing a particular business in a particular place, competition is left open to all others and there is no injury to the public."

In Linn v. Sigsbee, 67 Ill. 75, 80, the Supreme Court says : "The rule is well settled that any partial restraint of trade, or an agreement not to transact business at specified places   *   *   *   will not invalidate the agreement."

The contract in question is reasonable, is supported by a good and sufficient consideration, is only a limited and partial restraint of trade, if indeed, it be any such restraint, and is a valid and binding contract.

And this interpretation of the law when applied to the facts in the case, is in accord with justice and equity. The judgment is for the amount paid by appellant to Perryman, in money, for and with the full knowledge and at the instance and request of appellant. It should be repaid.

The fact that appellee has surrendered possession of the premises to the landlord does not change the questions involved in this case. The landlord, so far as appears by this record, may have promised appellee at the time of such surrender that said premises should not be let so as to violate appellee's agreement with appellant. There had been no breach of appellee's agreement when this suit was commenced or when it was tried in the Superior Court. Appellee can not sustain a contention that there may in the future be a breach of appellant's agreement, and that therefore appellant can not recover. Should there be a breach of his contract by appellant the appellee would then have his remedy.

The judgment of the Superior Court is affirmed.