THE UNION STRAWBOARD COMPANY

*v.*

WESLEY BONFIELD.

*Opinion filed December 18, 1901.*

1. CONTRACTS—*when contract is void as in general restraint of trade.* A contract whereby the seller of a manufacturing business agrees not to engage in the particular business "in the State of Illinois, or anywhere else where so doing may conflict with the business interests or diminish or lessen the profits" of the purchaser, is void, as against public policy.

2. SAME—*contract in restraint of trade applying to whole State is void.* A contract in restraint of trade may be good which embraces, within reasonable limits, parts of different States, but a contract which applies to the whole State is void and cannot be enforced.

3. PUBLIC POLICY—*the State has a public policy as a commonwealth.* Within its own sphere the State has a public policy as a commonwealth, which the courts of the State will enforce, distinct from questions of policy affecting the nation at large.

4. SAME—*it is against the policy of the State that a citizen must leave its borders to engage in business.* It is against the policy of the State that a citizen shall not have the privilege of pursuing his lawful occupation at some place within its borders, but must leave the State in order to support himself and family.

*Union Strawboard Co. v. Bonfield,* 96 Ill. App. 413, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. JOHN SMALL, Judge, presiding.

W. R. HUNTER, (O. P. BONNEY, of counsel,) for appellant:

An agreement in partial restraint of trade is good, provided it be not unreasonable and there be a consideration to support it.   To be reasonable the restraint imposed must not be larger than is required for the necessary protection of the party with whom the contract is made.   The restraint is reasonable when it is such, only, as to afford a fair protection to the interests of the party in whose favor it is imposed.   *Oregon Navigation Co.* v. *Winser,* 20 Wall. 64; *Hursen* v. *Gavin,* 162 Ill. 377; *Thermometer Co.* v. *Poole,* 51 Hurd, (N. Y.) 157.

The contract in this record is partial, only, because it restrains appellee from the manufacture and sale of but four kinds of strawboard and one of paper, and such other kinds as would interfere with the sale and consumption of those so specified.   There is no restriction as to all the various kinds known to the commercial world.

The contract in controversy is divisible.   Appellee agrees not to be interested in the manufacture or sale of strawboard within two distinct territorial districts: (1) In the State of Illinois; (2) anywhere else where so doing may conflict with the business interests of appellant. If one part of a contract is void as being in restraint of trade and another part of the contract is not, the court will give effect to the latter.   Chitty on Contracts, 578; *Lanzit* v. *Sefton Manf. Co.* 184 Ill. 326; *Hursen* v. *Gavin,* 162 id. 381; *Pelz* v. *Eichele,* 62 Mo. 171.

H. K. & H. H. WHEELER, (T. P. BONFIELD, and PADDOCK & COOPER, of counsel,) for appellee:

A contract in restraint of trade is total and general when by it a party binds himself not to carry on his trade or business at all, or not to pursue it within the limits of a particular country or State.   Such a general contract in restraint of trade necessarily works an injury to the public at large and to the party himself in the re-

spects indicated, and is therefore against public policy. *Hursen* v. *Gavin,* 162 Ill. 380; *Lanzit* v. *Sefton Manf. Co.* 184 id. 332; *Lynn* v. *Sigsbee,* 67 id. 81; *'Moore* v. *Bennett,* 40 Cal. 251; *Harding* v. *Glucose Co.* 182 Ill. 551; *Consumer's Oil Co.* v. *Nunnemaker,* 142 Ind. 568.

An agreement tending to prevent competition and create a monopoly is void by the principles of the common law, because it is against public policy. *Bishop* v. *Preservers' Co.* 157 Ill. 310; *People* v. *Gas Trust Co.* 130 id. 269; *Richardson* v. *Bueh,* 77 Mich. 632; *Straight* v. *Harrow Co.* 18 N. Y. 224; *Straight* v. *Standard Oil Co.* 49 Ohio, 137; *Western Woodenware Ass.* v. *Starkey,* 84 Mich. 76; *Distilling Co.* v. *People,* 156 Ill. 448.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Kankakee county sustained the demurrer of appellee to the declaration of appellant in an action of covenant brought in that court, and, the plaintiff electing to stand by its declaration, judgment was entered against it for costs. On appeal to the Appellate Court for the Second District the judgment was affirmed, and this further appeal was prosecuted.

The declaration contains three counts, in each of which it is alleged that the defendant and others, on September 1, 1887, for a valuable consideration, made, executed and delivered to the Union Strawboard Company an instrument in writing under their hands and seals, set out in the first count in *hæc verba,* as follows:

"Whereas, the Union Strawboard Company, a corporation under the laws of Ohio, has purchased, paying therefor the sum of $50,000, the paper mill of the Kankakee Paper Company, located at Kankakee, Kankakee county, in the State of Illinois, together with all the leasehold interest, rights, appurtenances and fixtures of said paper mill, together with the good will of said The Kankakee Paper Company in the manufacture and sale of sheet strawboard, rolled strawboard, wood pulpboard, pulp-lined board, wrapping paper, and other similar kinds of

boards and papers; and whereas, said The Union Strawboard Company would not have purchased said paper mill without this agreement on our part; and whereas, we, the undersigned, are the owners and proprietors of the said Kankakee paper mill and receive the profits and proceeds of this sale:

"Now, therefore, we, as a part consideration for the payment of said sum of $50,000, and as an inducement to said The Union Strawboard Company to pay said sum of money, do hereby covenant and agree to and with said The Union Strawboard Company that we shall not and will not, for the term of twenty-five years from the date hereof, directly or indirectly, engage in or be interested in the manufacture or sale of sheet strawboard, rolled strawboard, wood pulpboard, pulp-lined board, wrapping paper, or any other kind of boards or paper which will interfere with the sale and consumption of said above described board and papers, in the State of Illinois, or anywhere else where so doing may conflict with the business interests or diminish or lessen the profits of said The Union Strawboard Company in the manufacture and sale of said above described boards and papers, nor will we aid, encourage or assist any other person or persons, firm or corporation so to do; and the sum of $50,000, to be recovered by and paid to said The Union Strawboard Company, is hereby fixed and agreed upon as and for liquidated damages, to the payment of which said sum of $50,000 well and truly to be made to said The Union Strawboard Company, its successors or assigns, we do hereby bind ourselves, our heirs, executors and administrators, firmly by this contract in case of any violation of this contract by us, each one being responsible only for his own acts.

"In witness whereof we have hereunto set our hands and seals this .... day of September, A. D. 1887.

|  |  |
|---|---|
| F. CRAWFORD, | [Seal.] |
| W. BONFIELD, | [Seal.] |
| MARY E. MITCHELL, | [Seal.] |
| ABBIE L. HAMBLIN, | [Seal.] |
| FANNIE AHRENS, | [Seal.] |
| MARY J. HAMBLIN. | [Seal.]" |

In the second count a covenant not to engage in the business in the State of Illinois for a term of twenty-five years was set forth in general terms, and the instrument was made a part of the third count as set forth in *hæc verba* in the first count. Each count averred that on Feb-

ruary 1, 1890, the said Union Strawboard Company, to whom the instrument was made, for a valuable consideration sold, assigned and transferred to the American Strawboard Company all its rights, titles and interests in and to said instrument and all rights secured thereby. The first count alleges that on January 1, 1893, and from thence hitherto, said American Strawboard Company has been engaged in the business of manufacturing and selling in the State of Illinois the strawboards and papers mentioned in the covenant, and the third avers that said American Strawboard Company, during said period, has been engaged in manufacturing and selling said strawboards and papers in the State of Illinois and throughout the United States of America, except certain States and Territories excepted, as hereinafter stated. The breach alleged in the first count is, that the defendant has engaged and become interested in the manufacture and sale of strawboards and paper in the State of Illinois, and encouraged and assisted other persons named to manufacture and sell the same in said State, thereby interfering with the sale and consumption of said strawboards and papers in said State, and by reason of the premises the business interests of said American Strawboard Company are impaired and the profits of its business in said State greatly lessened and diminished. The breach alleged in the second count is, in general terms, that the defendant has not kept his covenant but has broken the same. The breach alleged in the third count is, that defendant has engaged and become interested in the manufacture and sale of strawboards and papers in the State of Illinois, and elsewhere in all States and Territories within the confines of the United States of America, except the Territories of Alaska, Arizona, Indian and New Mexico, and the States of Utah, Colorado, Idaho and North Dakota, in conflict with the business interests of the plaintiff, for the use of the American Strawboard Company, and by reason of the premises the business

interests of said plaintiff, for the use of said American Strawboard Company, have been and are impaired and the profits of the said business greatly lessened and diminished.

The covenant sought to be enforced in this action is, that the defendant will not, for a term of twenty-five years, engage or be interested in the manufacture or sale of certain kinds of strawboard, boards and papers, or any other kind of boards or paper which will interfere with the sale and consumption of such boards and papers, in the State of Illinois or elsewhere, when so doing may conflict with the business interests or diminish or lessen the profits of the Union Strawboard Company in the manufacture and sale of said boards and papers.   Passing by all questions concerning the declaration as to the covenant extending to the American Strawboard Company or the assignment to that corporation, and the interference with and diminishing and lessening the profits of the assignee of the contract, we will address ourselves directly to the question whether the contract is one upon which an action can be maintained under the averments of any count of the declaration.

The contract prohibits the defendant from engaging in the specified business in this State or country, or in any other, where so doing could interfere with the profits or business interests of the Union Strawboard Company,— so that the corporation may prevent him from doing business anywhere.  It provides that, so far as the defendant is concerned, the specified business shall be in the hands of the Union Strawboard Company wherever it may elect to do business, and that there shall be no competition with it anywhere on his part.   He is not to do business in this State, and if the Union Strawboard Company chooses to engage in business in any other State he must not go into business there or must quit his business.  He is left at liberty to engage in the business only in places where the Union Strawboard Company does not choose

to do business.   Such a contract is void, as against pub-
lic policy.  The courts will not enforce any contract which
excludes a party, generally, from following any lawful
trade or business beneficial to the community and to him.
(*Lanzit* v. *Sefton Manf. Co.* 184 Ill. 326.)  Among the reasons
for this rule which have been assigned are, that such a
contract interferes with the ability of the citizen to sup-
port himself and his family, discourages industry and
enterprise beneficial to the public, prevents competition
and exposes the public to the evils of monopoly.

It is insisted, however, that the contract is divisible,
and, the alleged violation being limited in the first and
second counts to the State of Illinois, is valid and bind-
ing within the State.   A contract in partial restraint of
trade is valid provided it is founded upon a good consid-
eration and only affords a reasonable protection to the
interests of the party in whose favor it is imposed, and
the prohibited area is reasonable, so as not to be injuri-
ous to the interests of the public and against public pol-
icy.  (*Linn* v. *Sigsbee*, 67 Ill. 75; *Hursen* v. *Gavin*, 162 id. 377.)
It is not sufficient that there is a good consideration, for
that is necessary to any contract; nor is it sufficient that
the restraint is no greater than necessary to secure the
intended benefits to the opposite party.   As we said in
*Lanzit* v. *Sefton Manf. Co. supra*, (p. 332): "If such were not
the rule, then the mere magnitude of the business and
trade involved in the contract would determine its val-
idity, overriding all questions affecting the public wel-
fare." The fact that engaging in business might interfere
with the business or injure or lessen the profits of the
Union Strawboard Company makes no difference, if the
contract is against public policy.   The restrictions im-
posed by this contract are probably no greater than nec-
essary to prevent competition with the Union Strawboard
Company in its business; but that is not the only test of
its validity.   If it should be conceded that the contract
is divisible, the question then is, under this declaration,

whether it can be enforced as to the entire State of Illinois.   Counsel contend that it is valid to that extent, at least, and that the rule stated on that subject in the cases above cited should not be adhered to.  The reason for the rule is, that it is against the policy of the State that the people of the whole State should be deprived of the industry and skill of a party in an employment useful to the public, and he should be compelled either to engage in other business or abandon his citizenship of the State and remove elsewhere in order to support himself and family.   The argument is, that a contract, to be in general restraint of trade, must extend to the entire realm of the United States, which would not be deprived of the industry of the citizen or of his citizenship unless he must go to a foreign country.  Within its own sphere the State has a public policy as a commonwealth, which the courts of the State regard and enforce, distinct from questions of policy affecting the nation at large.   The State regulates its internal affairs, supports those who become public charges, and is interested in the industries of its citizens.   It is against the policy of the State that its citizens should not have the privilege of pursuing their lawful occupations at some place within its borders, and that a citizen should be compelled to leave the State to engage in his business and to support himself and family. It is true that a contract may be valid which embraces portions of more than one State.  Trade and business are not affected by States lines, and a contract might be good in restraint of trade which embraced, within reasonable limits, parts of different States, but an agreement which applies to the whole State is void and cannot be enforced.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*